[No. C059718. Third Dist. July 14, 2009.]

In re T.S., a Person Coming Under the Juvenile Court Law.
SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN
SERVICES, Plaintiff and Respondent, v.
M.S., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

 \*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication
with the exception of parts II and III of the Discussion.

## COUNSEL

Nicole Williams, under appointment by the Court of Appeal, for Defendant and Appellant.

Robert A. Ryan, Jr., County Counsel, and Scott M. Fera, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

**SIMS, Acting P. J.**—Appellant, the father of the minor, appeals from the juvenile court's order terminating parental rights. (Welf. & Inst. Code, §§ 366.26, 395.)[1]

Appellant claims that a statutory exception to adoption applied because the minor's Indian tribe had identified guardianship as the permanent plan for the minor. (§ 366.26, subd. (c)(1)(B)(vi)(II).) In the published portion of the opinion, we reject this contention.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

Appellant also claims his trial attorney rendered ineffective assistance of counsel because she did not argue that another exception to adoption applied based on substantial interference with the minor's connection to his tribal community. (§ 366.26, subd. (c)(1)(B)(vi)(I).) In addition, appellant maintains he received ineffective assistance of counsel because his attorney failed to argue that Sacramento County Department of Health and Human Services (the Department) was required to seek a criminal conviction exemption for relatives selected by the minor's tribe to be guardians for the minor.

In the unpublished portion of the opinion, we reject appellant's claims of ineffective assistance of counsel. We therefore affirm the order terminating parental rights.

## FACTUAL AND PROCEDURAL BACKGROUND

A dependency petition was filed in Shasta County in August 2005 concerning the two-day-old minor, alleging the minor's mother tested positive for methamphetamine when the minor was born and admitted intravenous drug use on one occasion during her pregnancy. It also was alleged that appellant admitted past drug use and had a conviction for public intoxication. The petition further alleged the parents' home was cluttered, they did not have the items necessary to care for the minor, and they did not consistently demonstrate proper care of the minor while he was still in the hospital.

The minor's mother had Indian heritage through the Pit River Tribe (the Tribe), and prior to the jurisdictional hearing, the Tribe filed a notice of intervention, informing the court that the minor is an Indian child and the Tribe was appearing in the proceedings.

The allegations in the petition were sustained. Prior to the dispositional hearing, the matter was transferred to Sacramento County. In January 2006, a representative of the Tribe appeared at the transfer-in hearing and, in accordance with her recommendation, the minor was placed with the parents.[2] At the dispositional hearing in April 2006, the parents were ordered to comply with the case plan recommended by the Department.

By the time of the review hearing in October 2006, appellant was no longer living with the minor and the minor's mother, and he had decided he

---

[2] Thereafter, the minor was removed briefly from the parents pursuant to a supplemental petition, which was subsequently dismissed.

did not want to participate in further reunification services. At the review hearing, the juvenile court ordered that the minor remain in the mother's care and terminated appellant's services.

In July 2007, a supplemental petition was filed based on the mother's continued noncompliance with substance abuse treatment and her failure to take the minor to scheduled monthly checkups, and because she allowed appellant to have unauthorized contact with the minor. The minor was placed in a foster home, and the social worker recommended the mother's services be terminated.

Meanwhile, the Tribe was in the process of passing a resolution for placement of the minor in the home of maternal cousins who were active members of the Tribe, although they did not have an established relationship with the minor. Although the social worker had concluded that the minor was adoptable and the maternal cousins were willing to adopt, the Tribe did not agree with a permanent plan of adoption, believing "[g]uardianship [wa]s the more appropriate permanent plan to avoid severing the parental rights of both parents." The Tribe wanted the minor placed in a guardianship with relatives.

An evaluation by an Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) expert concluded that active efforts had been made to provide remedial and rehabilitative services to the family and that the minor would suffer serious emotional or physical damage if returned to parental care. However, the expert felt it was in the family's best interest to reunify as an Indian family, and she recommended guardianship as the permanent plan. She explained: "It is not unknown among Indian nations to allow their members who are struggling to achieve resolution to adverse circumstances every possible opportunity to succeed. In this case [the mother] has struggled to be successful in recovery, and is committed to continuing to pursue sobriety. In order to allow her future opportunities to reunify her family, the plan of long-term guardian[]ship is recommended. From a tribal perspective, it is in the family's best interest to reunify as an Indian family. Adoption would potentially remove the possibility that the child and his parent(s) could reunify as a family."

The juvenile court sustained the allegations in the supplemental petition. While the dispositional hearing was pending, an assessment for placement of the minor with the maternal cousins was commenced. The cousins had assumed guardianship of three other children and, reportedly, "there ha[d] been no concerns regarding their ability to care for the children in their home."

However, both cousins had criminal histories, which would require an exemption through "the Kinship Unit."

The husband's criminal record included misdemeanor convictions between 1991 and 1996 for possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)), possession of a dangerous weapon (Pen. Code, § 12020, subd. (a)), being under the influence of a controlled substance (Health & Saf. Code, § 11550, subd. (a)), petty theft (Pen. Code, § 484, subd. (a)), carrying a firearm in a vehicle (Pen. Code, § 12034, subd. (a)), receiving stolen property (Pen. Code, § 496, subd. (a)), two counts of corporal injury on a spouse or cohabitant (Pen. Code, § 273.5, subd. (a)), and battery (Pen. Code, § 242), as well as a 2000 violation for assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)) which, according to the social worker's report, was "[l]ikely" a felony conviction.

The wife's criminal record contained misdemeanor convictions in 2001 for tampering with a vehicle (Veh. Code, § 10852) and driving without a valid license (Veh. Code, § 12500, subd. (a)). Nonetheless, the social worker recommended that the minor be placed in the cousins' home upon receipt of a resolution to this effect by the Tribe "and/or approval from the Kinship Unit."

At the dispositional hearing in November 2007, the juvenile court terminated the mother's services and set the matter for a hearing pursuant to section 366.26 to select and implement a permanent plan for the minor. The court noted that an assessment of the maternal cousins for placement was underway but had not been completed, nor was there a resolution from the Tribe concerning the placement.

According to the report for the section 366.26 hearing, which was prepared in February 2008, the minor's foster parents were not interested in adoption or guardianship. Meanwhile, the parents had not visited the minor since shortly after the last hearing, in November.

In March 2008, on the date set for the section 366.26 hearing, the juvenile court continued the hearing for 90 days and ordered the Tribe to either submit a written resolution concerning placement or personally appear to explain its position.

Shortly thereafter, the Tribe passed a resolution establishing placement with the maternal cousins as "the first order of placement preference" for the minor and "approv[ing] the placement as a long term guardianship."

However, the Kinship Unit ultimately declined to approve the placement of the minor with the maternal cousins due to their criminal histories. The social worker recommended that the minor not be placed with the maternal cousins, as they would not be able to pass a guardianship assessment, and that a permanent plan of adoption be ordered.

The Tribe continued to recommend placement of the minor with the maternal cousins. The ICWA expert also continued to recommend a plan of guardianship with the maternal cousins, based on the fact that they had demonstrated their ability to provide a safe, nurturing home and had been approved for placement in the past. The expert opined: "The [minor's] best potential for healthy development as an Indian person lie[s] with his ongoing connection with his family and his tribe. Such an arrangement would also preserve the [minor's] family bond, an element that is essential for the healthy development of his identity."

At the section 366.26 hearing, the ICWA expert testified consistently with these views. She noted that the Tribe felt safe having the minor placed with the maternal cousins despite their criminal records, and that the Tribe "would know their tribal members better than anyone." The expert acknowledged she had never met the cousins or been to their home, and that her recommendation was based solely on the documented evidence she had received. She testified that she would defer to the tribal council's resolution in every case.

An adoption social worker testified that the minor was generally adoptable and an Indian foster family agency had identified a placement for him in which one of the foster parents was a member of the Tribe. The family was "open to considering" adoption of the minor. The social worker testified she would be able to find another Indian family to adopt the minor if this particular family was not willing to do so, although it might take longer to find a family affiliated with the Tribe.

The mother argued that an exception to adoption applied because the Tribe had identified guardianship as the permanent plan that would meet their prevailing social and cultural standards and protect the minor's best interests as an Indian child. Appellant joined in this argument.

The juvenile court concluded it had discretion to find adoption was in a child's best interests even though a tribe has identified guardianship or

long-term foster care with a relative as the preferred permanent plan. The court ruled "that is the situation that we have in this case," noting that the Department had located a placement with a member of the minor's Tribe and would place the minor with an Indian family if this placement did not work out. The court ordered a permanent plan of adoption and terminated parental rights.[3]

## DISCUSSION

### I

Appellant's first claim is that the juvenile court should have applied an exception to adoption because the minor's Tribe identified guardianship as the permanent plan for the minor. (§ 366.26, subd. (c)(1)(B)(vi)(II).) We disagree.

We review the juvenile court's ruling declining to find an exception to termination of parental rights for abuse of discretion. (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1342 [93 Cal.Rptr.2d 644].) " ' "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' " (*Id.* at p. 1351.)

■ " 'At the selection and implementation hearing held pursuant to section 366.26, a juvenile court must make one of four possible alternative permanent plans for a minor child. . . . *The permanent plan preferred by the Legislature is adoption.* [Citation.]' [Citation.] If the court finds the child is adoptable, it *must* terminate parental rights absent circumstances under which it would be detrimental to the child." (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1368 [52 Cal.Rptr.2d 474].)

Before the juvenile court may find an exception to adoption for an otherwise adoptable child, a parent must establish a "compelling reason for determining that termination would be detrimental to the child" due to one of several specified circumstances. (§ 366.26, subd. (c)(1)(B).) One such exception is when "[t]he child is an Indian child and there is a compelling reason for determining that termination of parental rights would not be in the best interest of the child, including, but not limited to: [¶] . . . [¶] . . . [t]he child's tribe has identified guardianship, long-term foster care with a fit and willing relative, or another planned permanent living arrangement for the child." (§ 366.26, subd. (c)(1)(B)(vi).)

---

[3] Appellant filed an application for rehearing, asserting the juvenile court erred by terminating parental rights despite the Tribe's resolution for placement of the minor with the maternal cousins in guardianship. The application for rehearing was denied.

The parent has the burden of establishing the existence of any circumstance that constitutes an exception to termination of parental rights. (*In re Cristella C.* (1992) 6 Cal.App.4th 1363, 1372–1373 [8 Cal.Rptr.2d 342].) "Because a section 366.26 hearing occurs only after the court has repeatedly found the parent unable to meet the child's needs, it is only in an extraordinary case that preservation of the parent's rights will prevail over the Legislature's preference for adoptive placement." (*In re Jasmine D., supra,* 78 Cal.App.4th 1339, 1350.)

Here, it is not disputed that the minor was adoptable. Thus, for the juvenile court to order a permanent plan other than adoption based on the proffered exception, it was required to find a compelling reason for determining that adoption would be detrimental to the minor because the Tribe had identified guardianship as the permanent plan and, thus, it would not be in the minor's best interest to terminate parental rights.

Appellant maintains that, regardless of the viability of the maternal cousins as a placement for the minor, the juvenile court was required to order a permanent plan of guardianship because this was the Tribe's recommendation.

However, a contrary conclusion was reached by the Court of Appeal for the Fifth District in *In re A.A.* (2008) 167 Cal.App.4th 1292 [84 Cal.Rptr.3d 841]. In that case, at the section 366.26 hearing, the children's tribe sought a permanent plan of guardianship with relatives from whom the children previously had been removed at the relatives' request. The children had experienced several placement changes during the dependency proceedings and had "attachment-disorder issues and developmental delays." (167 Cal.App.4th at p. 1302.) The children had been placed in a prospective adoptive home in which one of the prospective adoptive parents was a member of another tribe. (*Id.* at p. 1303.) The children had made gradual progress with their mental health issues in this placement and had begun to attach to their caretakers. (*Id.* at p. 1308.) The juvenile court ordered a permanent plan of adoption despite the tribe's identification of guardianship as the desired permanent plan.

The appellate court concurred, concluding that, "although guardianship may have served the [t]ribe's interests, the court, in assessing the children's best interests, was not compelled to agree with the [t]ribe." (*In re A.A., supra,* 167 Cal.App.4th at p. 1325.) The court noted: "The [t]ribe's earlier role in bringing the children's relative placement to a premature close and current request to change their placement yet again, notwithstanding the undisputed

evidence of the children's attachment problems, may similarly have persuaded the court that the [t]ribe's identification of guardianship did not coincide with the children's interest in stability and permanence. Under these circumstances, the court could conclude that the [t]ribe's identification of guardianship as a permanent plan for the children was not a compelling reason for finding that termination would be detrimental." (*Id.* at p. 1325.)

■ We agree that a juvenile court is not obligated to adopt the permanent plan designated by a child's tribe without conducting an independent assessment of detriment.[4] The exceptions to adoption relating to Indian children, like the other enumerated exceptions to adoption, are contained in section 366.26, subdivision (c)(1)(B), and, therefore, apply only if the described circumstances are present *and* there is a compelling reason for determining that termination of parental rights would be detrimental to the child as a result of such circumstances. (See fn. 4, *ante.*) Had the Legislature intended to preclude the court from ordering a permanent plan of adoption when a tribe has identified another permanent plan, it could have placed this provision in the next subdivision of section 366.26, subdivision (c)(2), which enumerates circumstances under which the juvenile court "shall not terminate parental rights," and includes other provisions involving Indian children. (See fn. 4, *ante.*) Instead, the provision was added to a subdivision that contains plain, unambiguous language conferring discretion upon the juvenile court to reject the exceptions in the absence of compelling evidence of detriment.

Contrary to appellant's claim, the legislative history regarding this statutory exception does not cause us to abandon the reasoning of *In re A.A., supra,* 167 Cal.App.4th 1292. Appellant relies on a statement in the Senate Judiciary

---

[4] The portions of section 366.26 addressed by appellant's argument are as follows:

"(c)(1) . . . [T]he court shall terminate parental rights unless either of the following applies: [¶] . . . [¶]

"(B) The court finds a compelling reason for determining that termination would be detrimental to the child due to one or more of the following circumstances: [¶] . . . [¶]

"(vi) The child is an Indian child and there is a compelling reason for determining that termination of parental rights would not be in the best interest of the child, including, but not limited to:

"(I) Termination of parental rights would substantially interfere with the child's connection to his or her tribal community or the child's tribal membership rights.

"(II) The child's tribe has identified guardianship, long-term foster care with a fit and willing relative, or another planned permanent living arrangement for the child. [¶] . . . [¶]

"(2) The court shall not terminate parental rights if: [¶] . . . [¶]

"(B) In the case of an Indian child:

"(i) At the hearing terminating parental rights, the court has found that active efforts were not made as required in Section 361.7.

"(ii) The court does not make a determination at the hearing terminating parental rights, supported by evidence beyond a reasonable doubt, including testimony of one or more 'qualified expert witnesses' as defined in Section 224.6, that the continued custody of the child by the parent is likely to result in serious emotional or physical damage to the child."

Committee's analysis of Senate Bill No. 678 (2005–2006 Reg. Sess.), which added the exception to adoption at issue here, that the provision "would essentially empower a tribe to veto the termination of parental rights by identifying a permanent living arrangement for the child." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 678 (2005–2006 Reg. Sess.) Aug. 23, 2005, p. 22.) However, this statement is lodged in a paragraph with other language that suggests the juvenile court's determination is discretionary. Thus, the analysis states that, under the provision, the court "*may* find a compelling reason for not terminating parental rights" when the child's tribe identifies a different permanent plan and the court would be required "to *consider* the alternatives to termination of parental rights provided by a tribe." (*Ibid.*, italics added.) When evaluated in this context, the single, fleeting reference in the legislative history to a tribe's "veto power" is insufficient to negate the meaning of the statute derived from its plain language and its overall design.

 Having concluded that a juvenile court retains discretion to reject the permanent plan identified by a child's tribe, we conclude that the court, here, exercised its discretion properly. The only prospective guardians who had been identified by the Tribe were the maternal cousins, whose criminal records had resulted in their rejection as a viable placement option. No other relatives had been identified as an appropriate placement for the minor, and the Tribe did not have any licensed foster families who could care for the minor. In sum, there were no appropriate families who were willing to assume guardianship of the minor.

Moreover, the ICWA expert had explained that the Tribe's identification of guardianship as the preferred permanent plan stemmed from its interest in preserving the minor's connection to his family and the Tribe. But, according to the report for the section 366.26 hearing, the minor's parents had stopped visiting him. And, as there were no family or tribal members who had been found appropriate for placement, there was no basis for believing that guardianship would be more likely to achieve these goals than would adoption by an Indian family. Under such circumstances, it was well within the juvenile court's discretion to decline to find an exception to adoption based on the Tribe's identification of guardianship as the permanent plan.

II, III*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
.

*See footnote, *ante*, page 1031.

## DISPOSITION

The juvenile court's orders are affirmed.

Raye, J., and Cantil-Sakauye, J., concurred.